## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AT3 TACTICAL, LLC, | Case No. 26-cv-28 (LMP/SGE) |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS OR TO TRANSFER AND DENYING MOTION FOR A PRELIMINARY INJUNCTION** |
| HOLOSUN TECHNOLOGIES, INC., | |
| Defendant. | |

Bradley J. Walz, Grace E. K. Rouser, and Hannah S. Fereshtehkhou, **Taft Stettinius & Hollister LLP, Minneapolis, MN**, for Plaintiff.

Brendan M. Kenny, **Hellmuth & Johnson PLLC, Edina, MN**; Erica J. Van Loon, **Armond Wilson LLP, Los Angeles, CA**; and Michelle E. Armond and Yue Han, **Armond Wilson LLP, Newport Beach, CA**, for Defendant.

Plaintiff AT3 Tactical, LLC brought this trademark infringement and unfair competition action against Defendant Holosun Technologies, Inc. ECF No. 1. Holosun moves to dismiss for improper venue or to transfer the case to the United States District Court for the Central District of California. ECF No. 15. AT3 asks the Court to deny the motion to transfer, ECF No. 34, and moves for a preliminary injunction against Holosun's allegedly infringing activity, ECF No. 22.

Because Holosun has not met its burden to show that dismissal is proper for lack of venue or its burden to show that transfer is appropriate, the Court denies Holosun's motion in its entirety. Likewise, because AT3 has not met its burden to show its entitlement to a preliminary injunction, the Court denies AT3's motion.

## BACKGROUND

### I.      Factual Background

AT3 is a Minnesota limited liability company with its principal place of business in St. Michael, Minnesota.  ECF No. 1 ¶ 5.  Holosun is incorporated in California with its principal place of business in City of Industry, California.  *Id.* ¶ 6.  Both companies engage in the production and sale of AR-15 parts and accessories, including sights.  *Id.* ¶ 7; ECF No. 17 ¶ 2.

AT3 began in 2013 as an informational website but has since expanded into a "full manufacturer and retailer of AR-15 parts, accessories, and optics."  ECF No. 1 ¶ 7; ECF No. 26 ¶ 2.  AT3 sells its own products and resells products from other brands on its website.  ECF No. 26 ¶ 4.  On August 19, 2019, AT3 began using the mark "ARO" in connection with one of its products, the ARO Micro Red Dot Reflex Sight.  ECF No. 1 ¶ 8; ECF No. 26 ¶ 5.  AT3 has steadily increased the types of products it offers under its ARO mark, to now include "rifle-oriented configurations sold with various mounting options, as well as pistol-focused variants such as the ARO-MINI for optics-ready subcompact handguns."  ECF No. 26 ¶ 7.  And AT3 has "expend[ed] substantial time, money, and resources marketing, advertising, and promoting the gun sights."  ECF No. 1 ¶ 15.  AT3 has sold approximately $3 million worth of ARO sights, ECF No. 26 ¶ 6, and its ARO products have been discussed or reviewed in various YouTube videos and firearm-related blogs, *see generally* ECF No. 25-2.

Holosun, like AT3, designs and manufactures gun sights.  ECF No. 1 ¶ 18.  Holosun is a much larger company than AT3 and is a "household name" within the optics industry.

ECF No. 25-8 at 3, 10; ECF No. 25-10 at 9.  Holosun sells its products through online channels as well as brick-and-mortar retailers such as Cabela's and Scheels.  ECF No. 25-6.  In 2024, Holosun prepared to launch a red-dot-sight series of products for rifles and eventually named the line of products the "ARO" series.  ECF No. 31 ¶¶ 2–5.  Prior to launching its ARO line, Holosun searched the term "ARO" on the United States Patent and Trademark Office's ("USPTO") website and found no registered ARO marks.  *Id.* ¶ 3.  As a result, Holosun states it was "not aware of" AT3's mark at that time.  *Id.* ¶ 4.  Holosun eventually debuted its ARO line in January 2025 at a Las Vegas gun show.  *Id.* ¶¶ 4, 9; ECF No. 26 ¶ 9.  Holosun's ARO line went on sale to the public in April 2025.  ECF No. 31 ¶ 13.

Shortly after the Las Vegas gun show—on February 13, 2025—AT3 filed an application with the USPTO to register the mark "ARO" in connection with "non-telescopic gun sights for firearms."[1]  ECF No. 26 ¶ 8.  AT3's "ARO" mark was eventually registered on November 11, 2025.  *Id.*

After Holosun's ARO line became publicly available, sales for AT3's own ARO products plummeted.  ECF No. 26 ¶¶ 13, 15–16.  But AT3 has not seen a similar decline in sales of its non-ARO products.  *Id.* ¶¶ 17, 19.  AT3 also alleges that Holosun's ARO products have displaced AT3's ARO products in the top search positions for "ARO red dot sight" and "ARO red dot" on websites such as Amazon and Google, *id.* ¶¶ 10–11, and AI

---

[1]    AT3 acknowledged, at the hearing on the motions, that it sought USPTO registration because it had learned about Holosun's proposed ARO line after it attended the January 2025 gun show.

tools have confused Holosun's ARO product's with AT3's by referring generally to the "Holosun AT3 Tactical red dot sight," *id.* ¶ 12. As a result, AT3 "believes the downturn in ARO and ARO-MINI sales is specifically attributable to Holosun's trademark infringement," *id.* ¶ 16, and that the "sales decline is driven by brand confusion and marketplace displacement," *id.* ¶ 20. AT3 further believes that Holosun's actions will cause "irreparable harm" in the form of "lost sales and profits" and by "eroding brand recognition, distorting consumer perception of the ARO mark, weakening [AT3's] position in critical online channels, and threatening the long-term viability and growth of AT3." *Id.* ¶ 21.

On November 11, 2025—the same day AT3 received a formal registration for the ARO mark—AT3 sent Holosun a cease-and-desist letter and demanded that Holosun stop using Holosun's allegedly infringing ARO mark. ECF No. 1 ¶ 26; ECF No. 1-4. AT3 also submitted takedown requests to Amazon—a platform used by Holosun to sell its ARO products—"against every Holosun ARO product." ECF No. 31 ¶ 15. Amazon "implemented the takedown and pulled all of the listings for Holosun's ARO series of products." *Id.* Holosun, as a result, stopped using its ARO mark and rebranded its ARO line to "ARO-CORE" or "ARO-EVO." *Id.* ¶¶ 18–19; ECF No. 25-11. But AT3 has refused to remove its takedown request from Amazon, and Amazon continues to limit the sales of "some" of Holosun's "rebranded ARO-CORE products." ECF No. 31 ¶ 21.

## II.    Procedural Background

AT3 filed this action on January 5, 2026. ECF No. 1. AT3 asserts four claims for relief: (1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), *id.* ¶¶ 32–

37; (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), *id.* ¶¶ 38–44; (3) deceptive marking in violation of Minnesota's Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43–325D.45 (the "DTPA"), *id.* ¶¶ 45–49; and (4) common-law trademark infringement, *id.* ¶¶ 50–56. In its complaint, AT3 asserted that the Court has federal question jurisdiction under 28 U.S.C. § 1331 and that "[v]enue is proper in this district under 28 U.S.C. § 1391(b)(2)" because "a substantial part of the events or omissions giving rise to the claim occurred in this district." *Id.* ¶ 4.

On January 29, 2026, Holosun filed a lawsuit against AT3 in the United States District Court for the Central District of California. *Holosun Techs., Inc. v. AT3 Tactical, LLC*, No. 2:26-cv-00929-RGK-BFM, ECF No. 1 (C.D. Cal. Jan. 29, 2026) ("California Complaint"). Holosun alleges that AT3 has infringed Holosun's copyrights for years by offering Holosun products for sale on AT3's website, *id.* ¶¶ 34–40, and that AT3 acquired its ARO registration from the USPTO in bad faith, *id.* ¶¶ 41–45. Holosun seeks, among other forms of relief, a court order cancelling the USPTO's ARO registration. *Id.* at 18.[2]

On February 9, 2026, Holosun moved to dismiss AT3's complaint for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure and, alternatively, to transfer this case to the Central District of California under 28 U.S.C. § 1404(a). ECF

---

[2]    That litigation remains in its initial stages. On May 22, 2026, the Central District of California granted a joint stipulation to extend the time for AT3 to answer Holosun's California Complaint to June 1, 2026, which the parties sought to allow this Court time to issue its decision on Holosun's Motion to Dismiss or Transfer and AT3's Motion for Preliminary Injunction. *Holosun Techs., Inc. v. AT3 Tactical, LLC*, No. 2:26-cv-00929-RGK-BFM, ECF Nos. 20, 21 (C.D. Cal. May 14, 2026).

No. 15. On February 13, 2026, AT3 filed a motion for a preliminary injunction seeking to enjoin Holosun from the continued use of Holosun's ARO, ARO-CORE, and ARO-EVO marks. ECF No. 22.

## ANALYSIS

The Court begins with Holosun's motion to dismiss or to transfer, as that motion's resolution will determine whether the Court should rule on AT3's motion for a preliminary injunction.

## I.    Motion To Dismiss for Improper Venue or To Transfer for Convenience

Holosun argues first that the Court is not a proper venue under 28 U.S.C. § 1391 and moves to dismiss under Rule 12(b)(3). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (explaining that 28 U.S.C. § 1406 and Rule 12(b)(3) "authorize dismissal . . . when venue is 'wrong' or 'improper' in the forum in which it was brought"). Alternatively, Holosun seeks a discretionary transfer of this matter to the Central District of California under 28 U.S.C. § 1404(a).

### A.    Improper Venue

Whether venue is "improper" under Rule 12(b)(3) is "governed by 28 U.S.C. § 1391." *Atl. Marine Const.*, 571 U.S. at 55. Section 1391(b) provides that an action may be brought in:

(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

6

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Section 1391 goes on to provide that a corporation is a resident, for venue purposes, in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id.* § 1391(c)(2).  When venue is challenged, the Court must determine whether the case falls within one of the three categories set out in § 1391(b).  *Atl. Marine*, 571 U.S. at 56.  If one of the categories applies, venue is proper; if not, the case must be dismissed or transferred.  *Id.*

A defendant seeking dismissal for improper venue under Rule12(b)(3) "bears the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the parties' dispute."  *United Nat. Foods, Inc. v. Maciel*, No. 24-cv-2610 (JRT/DJF), 2025 WL 1047519, at *2 (D. Minn. Apr. 7, 2025) (internal quotation marks omitted) (citation omitted).  In deciding a Rule 12(b)(3) motion, the Court is not limited to the complaint but may rely on all the "pleadings and affidavits."  *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 621 (6th Cir. 2025); *see Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) ("Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision."); *United Nat. Foods*, 2025 WL 1047519, at *2 (explaining that a court may "consider matters outside the pleadings, as relevant to the venue analysis").  At this stage, the Court construes all facts in favor of the

7

non-moving party.   *Paragon Freight Sys., LLC v. River City Ins. Agency, Inc.*, No. 20-cv-2023 (JRT/LIB), 2021 WL 3636062, at *3 (D. Minn. Aug. 17, 2021).

Holosun argued in its opening brief that venue is not proper under Section 1391(b)(2) because AT3's complaint did not sufficiently allege that a "substantial part of the events or omissions giving rise to the claim occurred in this district."  ECF No. 16 at 3.  In response, AT3 asserts that a substantial part of the events did occur here because it alleged that Holosun "engaged in the advertising, promotion, offering for sale, and sale of gun sights using the Infringing Marks in the state of Minnesota."  ECF No. 34 at 10 (quoting ECF No. 1 ¶ 21).  But AT3's sole example of such advertising is that a Minnesota based third-party retailer advertised Holosun's products for sale.  *Id.* (citing ECF No. 1-3).  The Court doubts that such evidence establishes venue in a trademark action. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (explaining that in evaluating proper venue, "Congress meant to require courts to focus on relevant activities of the *defendant* . . . ." (emphasis added)); *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) (explaining that the Court's focus "must be on relevant activities of the defendant in the forum state").

AT3 alternatively asserts that venue is proper under Section 1391(b)(1) because the Court has personal jurisdiction over Holosun.  ECF No. 34 at 11.  In support, AT3 submits evidence that Holosun's website points potential purchasers to at least eight authorized Minnesota dealers,[3] ECF No. 36-4; that at least two of the Minnesota dealers specifically

_____

[3]     Holosun stated in the California Complaint that it lists such authorized dealers on its website "to provide[] consumers with a list of authorized distributors and resellers of

sell Holosun ARO products, ECF No. 36-5; that another Minnesota dealer has "three dozen" Holosun products available for sale, ECF Nos. 36-2, 36-3; and that "Holosun has a sales representative based in Maple Lake, Minnesota," ECF No. 35 ¶ 4. AT3 also pointed out that, by Holosun's own admission, Holosun works "closely with specific distributors and resellers that carry its products and maintains close oversight over those distributors and resellers to ensure that its customers receive high-quality products and exceptional customer service." California Compl. ¶ 14.

Holosun provided no specific response to AT3's Section 1391(b)(1) argument and does not argue that the Court lacks personal jurisdiction over it. ECF No. 41 at 4. Instead, Holosun points out that AT3 "never pled" venue based on Section 1391(b)(1) and that "AT3's pivot to arguing jurisdiction under a different theory only confirms that its Complaint failed to adequately plead jurisdiction under § 1391(b)(2)." *Id.*

But Holosun provides no authority (nor does Holosun necessarily argue) that AT3's failure to plead Section 1391(b)(1) means that it cannot claim venue under Section 1391(b)(1) now. On the contrary, because venue is an affirmative defense, a plaintiff need not plead it at all. *See Williams v. Mississippi*, No. 23-cv-0086 (WMW/DJF), 2023 WL 3558157, at *2 (D. Minn. May 18, 2023) (citations omitted); *see also Tobien*, 133 F.4th at 621 (citation omitted) ("Because venue is an affirmative defense, the [plaintiff] is not required to address venue in its pleadings."); *U.S. Specialty Ins. Co. v. Aerial Timber*

---

Holosun products to help protect consumers from purchasing unauthorized products." *Holosun Techs.,* No. 2:26-cv-00929-RGK-BFM, ECF No. 1 ¶ 15 (C.D. Cal. Jan. 29, 2026).

*Applicators, Inc.*, No. 3:19-cv-00271, 2020 WL 3840533, at \*3 (D.N.D. July 8, 2020) ("[A]

plaintiff need not plead the specific basis for venue—or plead venue at all for that matter.");

*Luverne Truck Equip., Inc. v. Worldwide Equip., Inc.*, 173 F. Supp. 3d 915, 923–24 (D.S.D.

2016) (refusing to dismiss for lack of venue where plaintiff simply "fail[ed] to cite the

proper [venue] statute" in its complaint but otherwise sufficiently alleged personal

jurisdiction).  Instead, like a challenge to personal jurisdiction, venue is only tested *after* a

specific challenge is made. *See United Nat. Foods*, 2021 WL 3636062, at \*3.  At that point,

the Court is not restricted to information contained within the pleadings. *See id.*

Having found no authority that AT3 cannot invoke Section 1391(b)(1) in response

to Holosun's motion, and because Holosun provides no argument that venue is not proper

under Section 1391(b)(1) or that the Court lacks personal jurisdiction over Holosun, the

Court concludes that venue is proper here.[4] *See* 28 U.S.C. § 1391(b)–(c) (providing that

venue is proper in "a judicial district in which any defendant resides" and defining

residency for a corporation as "any judicial district in which such defendant is subject to

the court's personal jurisdiction"); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d

1384, 1392 (8th Cir. 1991) ("If personal jurisdiction exists at the commencement of the

---

[4]      Holosun suggested at the hearing that it *might* have argued venue is improper under
Section 1391(b)(1) if AT3 had pleaded it in the complaint.   But AT3 did assert
Section 1391(b)(1) as a venue basis in response to Holosun's motion.  As a result, Holosun
was presented with the opportunity to challenge AT3's assertion in its reply, but it did not
do so.  Likewise, Holosun could have brought a motion under Rule 12(b)(2) challenging
personal jurisdiction in the first instance, regardless of whether AT3 pleaded
Section 1391(b)(1) in the complaint.  Holosun chose not to do so.  The Court finds both
decisions telling and sees no reason to require AT3 to amend its complaint to plead a
technical citation to Section 1391(b)(1).

action, then venue is proper under 28 U.S.C. § 1391(b).").  Having concluded that venue is proper in District of Minnesota, the next decision is to determine, even so, whether the case should be transferred to Central District of California.

### B.    Transfer for Convenience

Holosun alternatively argues that—even if this District is an appropriate venue—it is an inconvenient one and the Court should transfer the case under 28 U.S.C. § 1404(a). ECF No. 16 at 7.  The Court finds that Holosun has not met its burden to show that a discretionary transfer under Section 1404(a) is appropriate.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  It "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper."  *Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964) (citation omitted). Section 1404(a) motions are not granted as a matter of course, and "federal courts give considerable deference to a plaintiff's choice of forum."  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).  Therefore, "the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  *Id.*

In deciding whether to transfer, courts employ a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id.* at 691. The Court is not limited to the pleadings and may also consider "undisputed facts presented through affidavits, depositions, stipulations, and other relevant documents."  *Dial Tech., LLC v. Bright House Networks, LLC*, No. 13-cv-2995 (MJD/TNL), 2014 WL 4163124,

at *8 (D. Minn. Aug. 21, 2014).  There is no "exhaustive list of specific factors to consider," but courts generally consider: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.  *Terra Int'l*, 119 F.3d at 691 (citing 28 U.S.C. § 1404(a)).

### i.    Convenience of the Parties

In assessing the relative convenience of the parties, "the logical starting point is a consideration of the parties' residences in relation to the district court chosen by the plaintiff and the proposed transferee district."  *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009) (citation modified).  When a defendant is a corporate party, the Court may properly consider the "expenses for airfare, meals and lodging, and losses in productivity from time spent away from work" that the party would endure for employees that would attend in-person proceedings.  *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010).

Holosun asserts that it has no connection to Minnesota, ECF No. 17 ¶¶ 3–7, and that any proceedings in Minnesota would cause inconvenience if its employees were required to attend in-person proceedings here, ECF No. 16 at 10.  But AT3 complains that transferring would have the opposite effect.  ECF No. 34 at 20.  Ultimately, both sides would incur expenses by traveling to the other's preferred forum.  This factor is neutral.  *See Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (finding the convenience factor was neutral where transferring case would have merely flipped the inconveniences to the plaintiff); *Terra Int'l*, 119 F.3d at 696–97 (citation

omitted) ("[S]hifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue.").

### ii.    Convenience of the Witnesses

"The convenience of the witnesses is generally considered the most important factor when determining whether to grant a transfer." *Shared Memory Graphics LLC v. Apple Inc.*, No. 5:09-cv-5128 (BSM), 2010 WL 5151612, at *4 (W.D. Ark. May 27, 2010). "In analyzing this factor, the Court 'must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum.'" *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991)). The Court may also consider "the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony." *Terra Int'l*, 119 F.3d at 696.

Because this factor mostly concerns whether witnesses will be available for trial, the Court focuses on "non-party witnesses since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *BAE Sys. Land & Armaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885–86 (D. Minn. 2015) (citation omitted). Non-party witnesses, on the other hand, cannot be forced to travel more than 100 miles. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition only . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person."). Here, neither party identifies any non-party witnesses, so this factor is neutral. *See Lyon Fin. Servs., Inc. v. Dutt*, No. 08-cv-4735 (RHK/JSM), 2008 WL 5104686, at *2 (D. Minn.

13

Nov. 25, 2008) (finding this factor neutral where no party identified non-party witnesses who would be "called upon to testify" or "be subject to the discovery process").

### iii.    Interests of Justice

When considering whether the interests of justice favor one forum over another, courts consider such factors as: (1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696.

Holosun argues that two of the factors—judicial economy and cost savings— support a transfer to California. ECF No. 16 at 8. First, says Holosun, judicial economy is served by a transfer because the "pending California case will already address the copyright and trademark dispute between the parties" and the cases can be consolidated upon transfer. *Id.* at 9. But the same is equally true in reverse: transfer of the California action to this Court would allow the cases to be consolidated and serve the same interests. Holosun next contends that the Central District of California is less congested than the District of Minnesota, and the cases would proceed to trial more quickly in California. *Id.* "Docket congestion is a permissible factor to consider in deciding a § 1404(a) motion, but it is not by itself, a dispositive factor." *In re Apple, Inc.*, 602 F.3d at 915 (internal citation omitted). Here, the statistics Holosun provides are not overwhelming, and "whether one court would move any given case to trial faster is 'speculative,' because 'case-disposition statistics may not always tell the whole story.'" *Id.* (citation omitted). As a result, "[t]he

14

docket-condition statistics cited by the parties do not tip the analysis in one direction or another in any significant way." *In re Eyewear Antitrust Litig.*, No. 23-cv-3065 (KMM/JFD), 2024 WL 2956631, at *11 (D. Minn. June 12, 2024).

Holosun finally argues that AT3's choice of forum should be given little to no deference because the events giving rise to this lawsuit did not occur here.[5]  ECF No. 16 at 10.  It is true that courts "provide less deference to the plaintiff's choice of forum when the plaintiff does not sue where the conduct complained of occurred." *Eyewear Antitrust Litig.*, 2024 WL 2956631, at *10.  But the same is true of Holosun's litigation in California, in which it accuses AT3 of copyright infringement for acts AT3 committed from Minnesota. *See* California Compl. ¶¶ 23–25, 35–38.  In any event, Holosun is correct that the bulk of the facts of this lawsuit did not arise here, and AT3's choice of form therefore "carries some weight, but it is not dispositive." *My Pillow, Inc. v. LMP Worldwide, Inc.*, 331 F. Supp. 3d 920, 930 (D. Minn. 2018).  Instead, it is just one factor.

---

[5]     In response, AT3 asserts that the first-to-file rule applies here.  ECF No. 34 at 18–19.  That rule posits that "[i]n cases where two courts have concurrent jurisdiction, the first court in which jurisdiction attached has presumed priority to consider the case." *Am. Dairy Queen Corp. v. W.B. Mason Co.*, No. 18-cv-693 (SRN/ECW), 2019 WL 135699, at *6 (D. Minn. Jan. 8, 2019).  But the first-to-file rule is usually cited as a reason to transfer the last-filed case, not as a defense in opposition to transfer. *See Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, No. 19-cv-1653 (PJS/DTS), 2020 WL 13002517, at *7 (D. Minn. Aug. 20, 2020) (explaining that the rule "gives courts discretion to manage overlapping litigation by dismissing, staying, or transferring the duplicative case").  And "[d]espite the important considerations the first-filed rule provides, it does not 'trump' the transfer analysis under 1404(a)." *Am. Dairy Queen*, 2019 WL 135699, at *6 (citing *Terra Int'l*, 119 F.3d at 697 n.12).

Ultimately, because judicial economy might slightly favor transfer, but AT3's choice of forum "carries some weight," the Court concludes that the interests of justice neither favor nor disfavor transfer.

### C.  Transfer Conclusion

Transfer motions are not granted as a matter of course. It is the moving party's burden "to show that the relevant factors make the requested forum more convenient than the forum in which the case was filed." *Eyewear Antitrust Litig.*, 2024 WL 2956631, at *4. Holosun here has not shown that any of the traditional factors weigh in favor of transfer. Accordingly, Holosun has not met its burden to transfer venue, so the Court denies Holosun's motion in its entirety.

## II.  Motion for Preliminary Injunction

The Court now turns to AT3's motion for a preliminary injunction restraining or enjoining Holosun "from promoting, selling, or distributing its infringing ARO gun sights, including [Holosun's] currently branded ARO-CORE and ARO-DEVO products." ECF No. 24 at 31–32.

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such relief is designed, primarily, to preserve "the status quo until the district court has an opportunity to grant full effective relief." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022). A party seeking a preliminary injunction must establish four factors: (1) likelihood of success on the merits, (2) likelihood of suffering irreparable harm in the absence of preliminary relief,

16

(3) the balance of equities favors the moving party, and (4) the injunction is in the public interest. *See Winter*, 555 U.S. at 20. Here, all the factors favor denying AT3's motion.

### A.     Likelihood of Success on the Merits

To establish this factor, AT3 "need only show a reasonable probability of success, that is, a fair chance of prevailing" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (internal quotation marks omitted) (citation omitted). AT3 asserts that it is likely to succeed on all of its claims, but acknowledges that its unfair competition, DTPA, and common-law trademark claims are analyzed identically to its federal trademark infringement claim. ECF No. 24 at 26.

"The principle underlying trademark protection is that distinctive marks—words, names, symbols, and the like—can help distinguish a particular artisan's goods from those of others." *Matal v. Tam*, 582 U.S. 218, 223–24 (2017) (citation omitted). To that end, a trademark owner may bring suit in federal court against any person or entity who, without the owner's consent, uses a mark that "too closely resembles" the owner's mark. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015); *see also* 15 U.S.C. § 1114(1)(a). "Trademark infringement may be established by showing the use of similar marks on similar or related products or services if such use creates a likelihood of confusion." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (internal quotation marks omitted) (citation omitted). To establish trademark infringement, AT3 must show that: (1) it has a valid, protectible mark, and (2) there is a likelihood of confusion between its mark and the marks that Holosun is using. *Id.* (citation omitted).

17

AT3 easily meets the first element, as the "ARO" mark is registered and therefore presumptively valid.  ECF No. 1-1; *see U.S. Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 552 (2020) (citation omitted) ("The owner of a mark on the principal register enjoys valuable benefits, including a presumption that the mark is valid." (internal quotation marks omitted)).

As to the likelihood of confusion element, courts in the Eighth Circuit consider six "nonexclusive, nonexhaustive" factors:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to pass off its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase.

*H&R Block*, 58 F.4th at 947 (internal quotation marks omitted) (citation omitted).  No single factor controls the inquiry, *id.*, and "depending on the context, a strong showing as to one factor may serve to make a different factor more or less important," *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 933 (8th Cir. 2021).  Still, "each must be analyzed." *A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1035 (8th Cir. 2022) (citation omitted).  Ultimately, however, the Court "must decide whether the defendant's use of a mark in commerce 'is likely to cause confusion, or to cause mistake, or to deceive' with regards to the plaintiff's mark." *B & B Hardware*, 575 U.S. at 144–45 (quoting 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A)).  Here, some of the factors favor confusion, but most favor the opposite.

18

### i.      Strength of the Mark

A "strong and distinctive" mark is "entitled to greater protection than a weak or commonplace one." *H&R Block*, 58 F.4th at 947 (citation omitted).  The measurements of a mark's strength are "its conceptual strength and its commercial strength." *ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018) (citation omitted).  A mark's conceptual strength is measured on a spectrum: "generic, descriptive, suggestive, or arbitrary or fanciful." *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010) (citation omitted).  "On this spectrum, an arbitrary or fanciful mark is entitled to the highest level of protection, while a generic mark is afforded no trademark protection." *Id.*

Here, Holosun and AT3 disagree about whether the ARO mark is "descriptive" or "suggestive."  ECF No. 30 at 18–19; ECF No. 37 at 16–17.  "A term is descriptive if it conveys an immediate idea of the ingredients, qualities or characteristics of the goods . . . and is protectible only if shown to have acquired a secondary meaning." *Frosty Treats Inc. v. Sony Comput. Ent. Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005) (internal quotation marks omitted) (citation omitted).  A mark is suggestive, on the other hand, if it requires "imagination, thought, and perception to reach a conclusion as to the nature of the goods." *Id.* (citation omitted).

Holosun asserts that the ARO mark is merely descriptive because "ARO" is nothing but an acronym for "adaptable reflex optic."  ECF No. 30 at 18–19.  But AT3 did not attempt to register "adaptable reflex optic," and the trademark examiner who approved registration of AT3's ARO mark evidently did not find the fact that ARO stands for

19

"advanced reflex optic" to be an obstacle for registration. *See generally* ECF No. 32-11. Indeed, the prosecution history for AT3's ARO mark shows that it was never rejected by the trademark examiner for lack of secondary meaning or any other reason. *See* ECF No. 32-11 at 3. This suggests that the examiner found AT3's ARO mark at least to be suggestive. *See ZW USA*, 889 F.3d at 449 ("[W]hen the PTO registers a mark without asking the registrant to show the mark has acquired secondary meaning, the registration is evidence that the mark is inherently distinctive (*i.e.*, suggestive, arbitrary, or fanciful).").

It is true that "the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action." *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987). But "the presumption of validity that attaches [upon] registration includes a presumption that the registered mark has acquired distinctiveness, or secondary meaning, at the time of its registration." *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, 745 F.3d 877, 882 (8th Cir. 2014). Holosun offers no argument at this stage that could overcome the presumption of distinctiveness that is accorded by the registration of AT3's ARO mark. *See id.* The Court therefore concludes that AT3's ARO mark is conceptually strong.

That does not end the inquiry, however, because AT3 also must show that its ARO mark is commercially strong. *See Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1042 (D. Minn. 2015) ("In addition to conceptual strength, the mark's commercial value, or marketplace recognition, factors into the strength of the mark analysis."). Factors to consider include the "public recognition and renown" of the mark considering the "extent of advertising, sales volume, features and reviews in publications, and survey evidence." *Roederer v. J. Garcia Carrión S.A.*, 732 F. Supp. 2d 836, 867

20

(D. Minn. 2010) (citation omitted); *see also H&R Block*, 58 F.4th at 947 (citation omitted) (explaining that "evidence regarding the amount of money a company has spent on advertising is circumstantial evidence of commercial strength" (internal quotation marks omitted)).

AT3 asserts that it "has used the ARO mark for at least 6 years, spent considerable time, money and resources advertising and promoting the mark, and it has sold thousands of units." ECF No. 24 at 18. The Court agrees that the evidence shows that AT3 has used the mark for six years and sold thousands of units. *See* ECF No. 26 ¶¶ 6, 13, 15. But AT3's statement that it has spent "considerable time, money and resources advertising and promoting the mark" is nothing more than a conclusory assertion. As a result, no evidence suggests that AT3 has indeed spent "considerable time, money and resources advertising and promoting the mark." Nor does AT3 provide any evidence that it or the ARO mark are publicly notorious, or evidence of actual consumers equating the ARO mark with AT3 specifically. *Zerorez*, 103 F. Supp. 3d at 1042 (commercial strength shown, in part, by evidence of a product's market share, notoriety through publicity, and advertising spending); *PRN Health Servs. LLC v. Ind. Health Sols., LLC*, 803 F. Supp. 3d 845, 857 (D.S.D. 2025) (finding commercial strength where evidence showed that company had "gained an excellent reputation in this industry").

As a result, even though AT3's ARO mark is conceptually strong, there is little evidence of its commercial strength. This factor therefore weighs only slightly in favor of a finding of likelihood of confusion.

21

###### ii.    Similarity of AT3's and Holosun's Marks

When analyzing the similarity of the marks at issue, "courts are to examine the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." *H&R Block*, 58 F.4th at 947–48 (internal quotation marks omitted) (citation omitted); *see also Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1280–81 (Fed. Cir. 2025) (citation omitted) ("[U]nder the Lanham Act, courts are required to analyze the similarity of the products in light of the way in which the marks are actually displayed in their purchasing context." (emphasis omitted) (internal quotation marks omitted)).  For that reason, the "use of identical, even dominant, words in common does not automatically mean that two marks are similar." *Sensient Tech.*, 613 F.3d at 764 (citation omitted)

Holosun does not argue that its prior use of the ARO mark was dissimilar to AT3's ARO mark.  Instead, Holosun contends this factor does not favor AT3's request for a preliminary injunction because Holosun has transitioned its ARO-branded products to either ARO-CORE or ARO-EVO, and neither of those marks are sufficiently like the ARO mark to confuse the average consumer.  ECF No. 30 at 19–22.  Holosun further argues that both it and AT3 affix their "house marks" to all product listings.  That is, they both use their brand name in front of the ARO or ARO-CORE or ARO-EVO marks—which minimizes confusion.  *Id.* at 21; *see also* ECF Nos. 32-3, 32-4, 32-15, 32-16, 32-17.

The Court does not find, at this stage, that the marks are so similar that the average consumer would be confused by the products' origins, for two reasons.  First, even though the marks begin with the same three letter acronym, the "use of identical, even dominant,

words in common does not automatically mean that two marks are similar." *Sensient Tech.*, 613 F.3d at 764 (citation omitted).  The addition of -CORE and -EVO to Holosun's ARO product listings meaningfully alter the presentation of the marks—both in look and from a phonetic standpoint—and diminishes confusion.  *See, e.g.*, *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830–31 (8th Cir. 1999) (finding a meaningful difference between "Lean Cuisine and Lean 'N Tasty" because "'cuisine' and 'tasty' are not so alike in form, spelling, sound, and meaning that when used on identical goods, an ordinary consumer is likely to be confused or misled"); *ZW USA*, 889 F.3d at 446 (finding similarity between "ONEPUL" and the phrase "one-pull"); *Zerorez*, 103 F. Supp. 3d at 1042 (holding that the defendant's use of the marks "Zero Res," "Zero Rez," and "ZERO REZ" were "without doubt . . . confusingly similar to the protected mark" Zerorez).

Second, and perhaps more importantly here, all the products at issue are marketed in a way that distinguishes Holosun's products from AT3's products.  For instance, listings always contains either Holosun's or AT3's company name.  *See, e.g.*, ECF No. 25-5 at 4; ECF No. 25-6 at 4; ECF No. 25-12 at 3; ECF No. 25-14 at 6.  And the products themselves are prominently affixed with the relevant company's house mark.  *See generally id.*  Both facts diminish confusion.  *Gen. Mills*, 824 F.2d at 627 (holding that the district court properly considered that two companies "have appended their house marks in a sufficiently prominent manner so that consumers would likely distinguish between the two products' sources"); *Luigino's*, 170 F.3d at 831 ("[T]he prominent display of the house marks convey perceptible distinctions between the products."); *H&R Block*, 58 F.4th at 948 (citation omitted) ("Otherwise similar marks are not likely to be confused when used in conjunction

23

with the clearly displayed name of the manufacturer."). AT3 asserts that the use of the house marks increases confusion rather than decreases it. ECF No. 37 at 18–19. But AT3 only provides out-of-circuit authority for that proposition. The Eighth Circuit, by contrast, has consistently held that the use of distinguishing features such as house marks and brand names diminishes confusion. *See, e.g.*, *Gen. Mills*, 824 F.2d at 627; *Luigino's*, 170 F.3d at 831; *ZW USA*, 889 F.3d at 447; *H&R Block*, 58 F.4th at 948.

As a result, this factor weighs against likelihood of confusion.

### iii. Degree to Which the Parties' Products Compete

If products are closely related, "confusion among customers is more likely." *Sensient Techs.*, 613 F.3d at 766. It cannot be disputed that the parties' products are closely related; in fact, Holosun does not even address this factor in its briefing. *See* ECF No. 30 at 16–24. This factor therefore weighs heavily in favor of a finding of likelihood of confusion. *See H&R Block*, 58 F.4th at 948–49 ("Direct competition can increase the likelihood of consumer confusion.").

### iv. Holosun's Intent

An "intent on the part of the alleged infringer to pass off its goods as the product of another creates an inference of likelihood of confusion." *Roederer*, 732 F. Supp. 2d at 871 (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). But such an intent cannot be inferred through speculation, and the fact that a competitor has knowledge of the trademark holder's mark and intends to compete with the trademark holder is insufficient. *Sensient Techs.*, 613 F.3d at 767 (explaining that knowledge "is not dispositive of the

24

inquiry because knowledge of another's product and an intent to compete does not correspond with an intent to mislead").

Holosun asserts that it was not aware of AT3's ARO mark when it introduced its own ARO products in January 2025 and that it conducted a search for the mark "ARO" on the USPTO website prior to introducing its own ARO-branded products. ECF No. 30 at 22–23; *see also* ECF No. 31 ¶¶ 2–4. AT3 argues, in response, that a USPTO website search is insufficient to establish that Holosun was unaware of AT3's use of the ARO mark. ECF No. 37 at 20. That might be true, but it is relevant to the level of care taken by Holosun. Because AT3 did not have a registered trademark at the time Holosun introduced its product, this attempt at diligence by conducting a web search weighs against a finding of intent.

AT3 further argues that Holosun was aware of AT3's ARO mark because the parties attended the same Las Vegas gun show in January 2025 and that this creates at least an "inference of [Holosun's] intent to confuse the public." ECF No. 37 at 20. But, at best, the fact that both companies attended the same gun show would support an inference that Holosun knew of AT3's ARO products. It does not support the additionally required inference that Holosun intended to mislead the public. That is because mere knowledge of a mark does not equate to an intent to confuse the public. *Sensient Techs*., 613 F.3d at 767.

Finally, AT3 asserts that it does not have to show intent to ultimately win on its claims. ECF No. 24 at 20. True enough, but at this stage "the absence of such intent is a factor to be considered." *Sensient Techs*., 613 F.3d at 766 (citation omitted). And because

25

"there is no support in the record for [AT3's] assertion other than speculation," this factor weighs against likelihood of confusion. *Id.* at 767.

### v. Incidents of Actual Confusion

Although evidence of actual confusion is not necessary to find that a likelihood of confusion exists, "it is perhaps the most effective way to prove a likelihood of confusion." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602 (8th Cir. 1999). Actual confusion may take the form of testimony about incidents of confusion or survey evidence. *Roederer*, 732 F. Supp. 2d at 872.

AT3 provides no evidence of actual confusion. ECF No. 24 at 21–22. Instead, AT3 asserts that confusion is shown "in the form of AI search prompts" because an AI tool referred "to Holosun's product as a 'Holosun AT3 Tactical red dot sight,'" ECF No. 26 ¶ 12, which would lead a consumer who used AI to "be confused into believing that [Holosun] and AT3 [] are affiliated or connected in some way," ECF No. 24 at 22. But AT3's assertions are both vague and irrelevant. First, AT3 does not, for instance, tell the Court how the AI tool was prompted. This is important because "[c]onfusion created by the plaintiff is not evidence of actual confusion in the marketplace." *Davis v. Walt Disney Co.*, 430 F.3d 901, 904 (8th Cir. 2005). Perhaps the method by which AT3 prompted the AI tool caused the AI tool to equate the two products. More importantly, the actual confusion test focuses on the "ordinary purchaser." *Luigino's,* 170 F.3d at 831 (citation omitted). ChatGPT plainly is not the "ordinary purchaser." And although actual confusion is not required, that AT3 provides no such evidence at this stage is "telling." *Hubbard Feeds*, 182 F.3d at 603. This factor weighs against likelihood of confusion.

###### vi.      Types of Products and Conditions of Purchase

This final factor considers "whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *ZW USA*, 889 F.3d at 447 (citation omitted). The Court must stand "in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Id.* (citation omitted). The "kind of product" and "its costs" are relevant considerations. *SquirtCo.*, 628 F.2d at 1091 (citation omitted). This factor is "more important in confusion-of-source cases where the degree of care that the purchaser exercises in purchasing a product can eliminate the confusion that might otherwise exist." *Sensient Techs.*, 613 F.3d at 769 (citation omitted). Generally, that confusion is less likely when "consumers are purchasing expensive products," *Eyebobs, LLC v. Snap, Inc.*, 259 F. Supp. 3d 965, 977–78 (D. Minn. 2017), because those consumers are more likely to "exercise a high degree of care when making their purchases," *Lovely Skin*, 745 F.3d at 889. On the other hand, courts have found that consumers are less likely to exercise a high degree of care, and that confusion therefore is more likely, when the products are "low-cost" and "fungible," *ZW USA*, 889 F.3d at 448, because such consumers may be prone to "impulsive" or "quick purchase[s] off the shelf," *Zerorez*, 103 F. Supp. 3d at 1044.

Here, the parties agree that their respective products are sold for at least $150. ECF No. 24 at 23–24; ECF No. 30 at 24. But they disagree as to the significance of that cost. AT3 argues that, when compared to the cost of a rifle, the $150 spent on an optic sight is less considerable. ECF No. 24 at 23. Holosun, pointing to *Eyebobs*, argues that the price

is indicative of a higher degree of care. ECF No. 30 at 24. The Court agrees with Holosun. *Compare Eyebobs*, 259 F. Supp. 3d at 977–78 (holding that purchasers of $129.99 eyeglasses were "likely to take care to ensure that they are getting exactly what they want"), *with ZW USA*, 889 F.3d at 448 ("[A]n ordinary consumer exercises minimal care when purchasing a low-cost, fungible product like dog-waste disposal bags, even in bulk."), *and Zerorez*, 103 F. Supp. 3d at 1044 (finding less likelihood of confusion where consumers were less likely to make "an impulsive decision or a quick purchase off the shelf"). Although a product's price is not the only relevant factor to the Court's inquiry on this element, *ZW USA*, 889 F.3d at 447–48, AT3 only alternatively posits that consumers might mistake its products for Holosun's because the ARO and ARO-CORE/EVO marks are confusingly similar, ECF No. 37 at 20. But the Court, for the reasons already noted, has found that the marks are marketed in such a way as to reduce the likelihood of confusion. This factor weighs against likelihood of confusion.

### vii.    Conclusion

"Before the grant of a preliminary injunction is warranted," AT3 must "show a probability of confusion, not merely a possibility." *H&R Block*, 58 F.4th at 950 (citation omitted). And to "satisfy the requisite probability standard, there must be a substantial likelihood that the public will be confused." *Id.* (internal quotation marks omitted) (citation omitted).

The Court finds at this stage that four of the six likelihood-of-confusion factors weigh against likelihood of confusion, one factor weighs heavily towards likelihood of confusion, and one factor only slightly favors a finding of likelihood of confusion. Further,

28

while no factor is dispositive, "actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020) (citation omitted). Here, the absence of any evidence of actual confusion means that factor weighs in Holosun's favor. Considering all the factors together, the Court concludes that AT3 has not met its burden to show a "probability of confusion." *H&R Block*, 58 F.4th at 950 (citation omitted). As a result, the Court concludes that AT3 has not shown a likelihood of success on the merits. *Id.*

## B.    Likelihood of Irreparable Harm

The "basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (per curiam) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959)). Therefore, "to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm" if no injunction is entered. *Id.*; *Winter*, 555 U.S. at 22. "[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (alteration in original) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 320 (8th Cir. 2009)).

The Lanham Act allows a presumption of irreparable harm if a plaintiff shows a likelihood of success on the merits. *See* 15 U.S.C. § 1116(a). But "[w]ithout showing a likelihood of confusion, [AT3] is not entitled to a rebuttable presumption of irreparable harm." *H&R Block, Inc.*, 58 F.4th at 951. Because the Court concludes that AT3 has not shown a likelihood of success, AT3 is not entitled to that presumption. As a result, AT3

29

must show harm that "is certain and great and of such imminence that there is a clear and present need for equitable relief." *Id.* (citation omitted).

AT3 has not made such a showing, for two reasons. First, AT3 delayed seeking this preliminary injunction, which "vitiates much of the force of [its] allegations of irreparable harm." *Kohls v. Ellison*, 166 F.4th 728, 732 (8th Cir. 2026) (quoting *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977)); *Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (noting that unreasonable delay "is a sufficient basis to deny a preliminary injunction"). Delay is calculated by measuring the time between when the plaintiff sought injunctive relief and the time when the plaintiff had "knowledge of the conduct of the defendant." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013). Whether a delay is unreasonable is "context dependent," but one particularly strong indication of unreasonable delay is when an injunction is sought only after the harm has occurred, making it impossible for a court to "preserve the status quo." *Ng*, 64 F.4th at 998 (citation omitted).

AT3 was aware by January 2025 that Holosun would be introducing an ARO-branded line of products. ECF No. 37 at 10. And AT3 even understood the threat that Holosun's ARO-branded products would place on its business, as it almost immediately filed its trademark application with the USPTO. ECF No. 26 ¶ 8. Yet AT3 waited almost a year until January 5, 2026, to file this action, ECF No. 1, and another month to file the motion for a preliminary injunction, ECF No. 22. This 13-month delay between learning of Holosun's allegedly infringing products and seeking a preliminary injunction weighs against granting an injunction. *See, e.g.*, *Kohls*, 166 F.4th at 732 (finding delay of

30

16 months in seeking injunctive relief failed to demonstrate irreparable harm); *Adventist Health Sys./Sunbelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 806 (8th Cir. 2021) (same for 12-month delay); *Minn. State Coll. Student Ass'n v. Cowles*, 620 F. Supp. 3d 835, 855 (D. Minn. 2022) (same for 11-month delay); *CHS, Inc. v. PetroNet, LLC*, No. 10-cv-94 (RHK/FLN), 2010 WL 4721073, at *3 (D. Minn. Nov. 15, 2010) (same for 8-month delay in a copyright dispute).

AT3 argues that it did not learn with *certainty* of Holosun's infringement until Holosun officially introduced the products for sale in April 2025 and that AT3 then took several months to investigate its claim and determine whether "there was an actual likelihood of confusion." ECF No. 37 at 10. Maybe so, but nothing prohibited AT3 from bringing an earlier lawsuit and a corresponding preliminary-injunction motion and at least attempting to make its case. Regardless, by its own admission, AT3 knew with certainty that it had claims against Holosun in November 2025, when it sent Holosun a cease-and-desist letter and sent Amazon a takedown notice. Yet even then it did not bring the preliminary injunction motion until February 2026. AT3 protests that it should not be penalized for engaging in negotiations with Holosun rather than filing this action. The Court appreciates the point, but AT3's decision to attempt informal resolution (including its decision to go to Amazon for relief instead of the Court) while the harm was actually occurring that it now asserts is irreparable, cuts against its assertions. Evidently, the harm that AT3 was experiencing by November 2025 was not so great as to compel it to forgo informal negotiations with Holosun. *Ng*, 64 F.4th at 998 (necessity of preliminary injunction lessened when the moving party files only "after it would have been possible"

to preserve the status quo). The inability to provide an immediate remedy at the start of the lawsuit supports a finding that the "delay was unreasonable" and undermines AT3's "goal of preventing irreparable harm." *Id.*

Second, even setting aside the length of delay, AT3 does not show that it will be irreparably damaged. AT3 asserts irreparable harm in the form of "eroding brand recognition, distorting consumer perception of the ARO mark, weakening . . . position in critical online channels, and threatening the long-term viability and growth of AT3 Tactical's ARO product line." ECF No. 24 at 27. It is true that "consumer confusion" affecting brand recognition can constitute irreparable harm. *H&R Block, Inc.*, 58 F.4th at 951–52. But AT3 puts forth no actual evidence of consumer confusion and instead relies on its own subjective belief that its declining sales are caused by such confusion. ECF No. 26 ¶ 21 (emphasis added) ("AT3 Tactical *believes* that Holosun's ongoing trademark infringement has caused, and is continuing to cause, irreparable harm to AT3 Tactical." (emphasis added)). AT3's belief that its brand recognition will continue to suffer is not sufficient to justify a preliminary injunction. *H&R Block, Inc.*, 58 F.4th at 952 (citation omitted) ("Given the paucity of evidence concerning consumer confusion, H&R Block's worry about potential negative publicity and loss of intangible assets, such as reputation and goodwill, is speculative and inadequate to demonstrate a clear and present need for equitable relief." (internal quotation marks omitted)); *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (holding that "uncorroborated claim[s]" that harm to "goodwill and reputation is inevitable" was too speculative); *Gen. Motors Corp.*, 563 F.3d at 319 (noting that the burden is on a moving party to "establish

the threat of irreparable injury" such as "damaged goodwill, reputation, and trademarks" and that reliance on vague assertions of "general business principles" is "too speculative to establish such injury").

AT3 alternatively appears to assert irreparable harm in the form of lost sales, both in the past and in the future, and that the "damage can be directly tied to the actions of" Holosun.  ECF No. 24 at 28; *see also* ECF No. 37 at 5 ("This fact is supported by AT3's sales data that demonstrates a causal connection between the dramatic decline in sales for AT3's ARO and ARO MINI gunsights at the same time that Defendant introduced its ARO gunsights.").  But lost sales to AT3 in the past cannot form the basis for irreparable harm because irreparable harm is focused only on "future" harms.  *Choreo, LLC v. Lors*, 164 F.4th 667, 671 (8th Cir. 2026).  Moreover, the general rule is that "[e]conomic loss, on its own, is not an irreparable injury so long as the losses can be recovered."  *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022) (citation omitted).  AT3 makes no argument that sales it believes it is entitled to in the future cannot be recovered through economic relief, and so has not met its burden to show that the "financial harm" will "be so uncertain that it renders the damages incalculable and therefore irreparable." *Choreo*, 164 F.4th at 671; *see also id.* at 672 (noting that even though the moving party filed "declarations by two of its employees" that claimed "alleged harm from loss of goodwill," the moving party was not entitled to relief because it did not explain "why the loss defies calculation"); *Gen. Motors Corp.*, 563 F.3d at 319 ("The district court did not clearly err by finding that any lost sales would amount to a compensable injury.").

### C.     Balance of the Equities

The balance of equities is next, *Winter*, 555 U.S. at 20, which requires weighing "'the threat of irreparable harm' shown by the mov[ing party] against 'the injury that granting the injunction will inflict on other parties.'" *MPAY Inc.*, 970 F.3d at 1020 (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)).

AT3 argues that the balance of the harms weighs in favor of a preliminary injunction because Holosun has no legal right to sell infringing products and therefore would not be harmed by the injunction of such sales.  ECF No. 24 at 28–29; ECF No. 37 at 21–22.  True, but the Court has concluded that AT3 has not shown a likelihood of success that Holosun is continuing to infringe AT3's marks.  An injunction, then, would merely stop Holosun from selling products that, as yet, AT3 has not demonstrated a likelihood that it may lawfully prevent Holosun from selling.  The balance of the equities favors Holosun.  *MPAY Inc.*, 970 F.3d at 1020–21 (citation omitted) (rejecting argument that the harm felt by "willful infringer[s]" was irrelevant because the moving party "failed to show a likelihood of success on the merits" (alteration in original)); *Fischer & Frichtel Custom Homes, LLC v. Fischer Mgmt., LLC*, No. 4:21-cv-00470-MTS, 2021 WL 1750174, at *8 (E.D. Mo. May 4, 2021) (holding that the balance of the equities favored defendant where trademark holder failed to show a likelihood of confusion).

### D.     Public Interest

Finally, AT3 argues that the public's interest in having purchasing clarity weighs in favor of a preliminary injunction.  ECF No. 24 at 29–30.  But since the Court has found no likelihood of confusion, the argument is unpersuasive.  *MPAY Inc.*, 970 F.3d at 1021

(rejecting a similar public-interest argument where plaintiff had shown no likelihood of confusion).

## CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Holosun's Motion To Dismiss or Transfer Venue (ECF No. 15) is **DENIED**.

2.    AT3's Motion for a Preliminary Injunction (ECF No. 22) is **DENIED**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: May 27, 2026                         *s/Laura M. Provinzino*
                                            Laura M. Provinzino
                                            United States District Judge